IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS CORP. § | | |
| Vs. § | | CIVIL ACTION NO. 2:04-CV-167 |
| WG SECURITY PRODUCTS, INC., ET AL. § | | |

**MEMORANDUM OPINION AND ORDER**

Various motions are pending in this patent infringement case. This order resolves the issues relating to the plaintiff's motion for leave to supplement (#62), the plaintiff's motion to compel (#35), the plaintiff's motion to disqualify Norman Hansen as an expert for the defendant (#51), and the joint motion to extend pre-trial deadlines and jury selection (#67).

1. The court grants the plaintiff's motion for leave to supplement its infringement contentions with respect to the '490 patent (#62).

2. The court grants the plaintiff's motion to compel (#35) to the extent outlined in this order. The court has considered the positions of the parties in light of the supplemental responses filed in this case. The court orders the following:

    a. The defendants shall produce all documents demonstrating the relationship between the defendants and the "non-party company in China" referenced in the plaintiff's and the defendants' supplemental responses. For discovery purposes, these documents are relevant and should be produced. In addition, the defendants are reminded that their obligation to produce any and all relevant documents in their possession, custody, or control includes the obligation to produce

documents in the possession of third parties if the defendants have the right of control over those documents.  To this end, it is relevant whether the defendants have access to these documents in the ordinary course of business, through a contractual relationship, or through an ownership affiliation. The court has recently issued discovery orders in another patent case.  Those orders addressed similar issues and imposed sanctions for the failure to comply with this obligation.  *See Kamatani v. BenQ Corporation*, 2:03-CV-437, Dkt. ##123, 175.

      b.      To the extent not previously produced, the defendants shall produce all technical documentation associated with the accused products, including those accused in the supplemental infringement contentions.  Such technical documents shall also include, without limitation, documents showing the design and development of the accused products.  Such documents should also include, without limitation, any mechanical drawings associated with the tags.

      c.      Likewise, to the extent not previously produced, the defendants shall produce all source code for the accused products, including those accused in the supplemental infringement contentions.

      d.      The defendants shall produce, to the extent they exist, samples of the Supersensor and Supersensor II tags as well as any additional tags accused of infringement.

      e.      To the extent not previously produced, the defendants shall produce financial documents together with backup demonstrating revenues, profits, and costs associated with the accused products.  Should documents exist which demonstrate profits and margins of the accused products, the court orders the defendants to produce such documents.

      f.      The defendants shall produce all non-privileged documents referring to the plaintiff's products or patents, such documents to include, without limitation, non-privileged studies and

analyses, internal e-mails, memoranda, or other communications.

  g. The defendants shall produce any and all insurance and/or indemnity *agreements* pertaining to the accused products.

  h. The defendants shall produce all documents which refer or relate to the agreements which form the basis of the defendants' counterclaims, including, without limitation, any internal documents or communications together with any confidential information that was allegedly provided to the plaintiff under the agreements.

  i. The defendants shall produce all documents pertaining to the manufacture and distribution of their products. Such documents shall include any documents which identify the manufacturers and/or distributors of the component parts used to make the defendants' products.

  j. The defendants had objected to various requests on the grounds that they should not be required to produce documents with respect to unaccused products. Much of this objection is now moot, given that the supplemental infringement contentions filed by the plaintiff specifically accuse the Sensorsense VST tag, the Pro-Guard and the Uni-Guard. Documents related to these products are relevant and are ordered to be produced. In addition, the court has considered the potential relevance of documents relating to "tags compatible with Sensormatic's SuperTag detacher." The court holds that the plaintiff has sufficiently demonstrated the relevance of such documents for discovery purposes, and the court orders such documents produced.

  k. The court is mindful that, except with regard to documents related to unaccused products, the defendants maintain they made a diligent effort to search for and to produce all relevant documents. They contend also that they have sought, obtained, and produced documents from the Chinese entity. Nevertheless, the court issues this order to make it plain that the documents sought

by the plaintiff are relevant documents within the scope of the court's discovery order and orders the defendants specifically to search for and produce the documents outlined herein. The production set forth herein shall occur within thirty (30) days of the date of this order. The defendants shall file with the court, at the conclusion of the thirty (30) days, declarations and/or affidavits from representatives of the defendants attesting to the scope of the search and documents produced in compliance with this order. Such declarations and/or affidavits shall also state with particularity all efforts made to acquire documents from any company affiliated with or having a relationship with the defendants to manufacture or distribute any accused product. Accordingly, the plaintiff's motion to compel (#35) is granted to the extent outlined in this order. To the extent the motion sought additional relief it is denied.

3.      The court grants the plaintiff's motion to disqualify Norman Hansen as an expert witness (#51). This case is similar to *Eastman Kodak Co. v. AGFA-Gevaert N.V.*, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003). That court stated that "[f]ederal courts have the inherent power to disqualify an expert from participating in litigation." *Id.* at *1 (*citing Popular, Inc. v. Popular Staffing Servs. Corp.*, 239 F. Supp. 2d 150, 152 (D.P.R. 2003)). Expert disqualification may be proper when "a party retains expert witnesses who previously worked for an adversary and who acquired confidential information during the course of their employment." *Eastman Kodak*, 2003 WL 23101783 at *1 *(quoting Space Sys./Loral v. Martin Marietta Corp.*, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995). In general, courts apply a two-step inquiry to evaluate whether disqualification is proper. First, the court asks whether the adversary had a confidential relationship with the expert. Second, the court asks whether the adversary disclosed confidential information to

the expert that is relevant to the current litigation. *Eastman Kodak*, 2003 WL 23101783 at *2.[1] The burden is on the party who seeks disqualification of an expert to establish that a confidential relationship exists and that the confidentiality has not been waived.

Under these cases, the court is persuaded it should disqualify Mr. Hansen. The expert is a former Sensormatic employee, a named inventor on one of the patents in suit, and a former 30(b)(6) designee on behalf of Sensormatic in other litigation. Mr. Hansen signed an employment agreement and confidentiality agreements with Sensormatic. He also bound himself, through an Agreement and General Release, to cooperate with Sensormatic in litigation over claims made against Sensormatic about which Mr. Hansen possessed knowledge as a result of his employment. The terms of these agreements require Mr. Hansen to maintain the confidentiality of information learned through his employment with Sensormatic. The evidence therefore demonstrates that the answer to the first question–whether a confidential relationship existed (or whether it is objectively reasonable to believe that a confidential relationship existed)–is yes.

The court also answers the second question in the affirmative. The expert is a named inventor on one of the patents in suit. *See* '419 patent. As noted by the court in *Eastman Kodak*, Mr. Hansen seeks to serve as a patent consultant against his former employer "with respect to issues relevant to the very technology he worked on for his former employer." 2003 WL 23101783 at *5 n.5. Likewise, Mr. Hansen actually served as a 30(b)(6) witness for Sensormatic in a prior litigation involving the '419 patent. The court finds that Mr. Hansen possesses confidential information

---

[1] The Fifth Circuit has articulated a similar test which asks whether it was objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed. If so, the court asks whether any confidential or privileged information was disclosed by the first party to the expert. *See Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996).

through his employment with Sensormatic and his prior designation as a 30(b)(6) witness on behalf of Sensormatic in the previous litigation. Therefore, the answer to the second inquiry is also yes.

The defendants contend, however, that Sensormatic waived the right to challenge their use of Mr. Hansen. The defendants contend that Sensormatic failed to designate any portion of Hansen's prior 30(b)(6) testimony as confidential and that the deposition transcript is available on the Internet. Thus, according to the defendants, any information known to Hansen is in the public domain and they should be free to use him as an expert in this case.

The court rejects this argument. Hansen was a 30(b)(6) designee on behalf of Sensormatic. He was not previously designated as an expert witness. Had Mr. Hansen been designated as an expert, then the defendants would have a stronger argument that Sensormatic had previously put into issue the entirety of Mr. Hansen's knowledge base concerning the subject matter of the patent and his former work. *See English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1503 (D. Colo. 1993). As the plaintiff observes, however, when Mr. Hansen acted as the plaintiff's 30(b)(6) designee, the plaintiff, through counsel, attempted to maintain the confidentiality of privileged information known to Mr. Hansen. The court is not persuaded that the circumstances of Mr. Hansen's prior designation as a 30(b)(6) witness support a finding of waiver.

Finally, the court has considered the public interest in allowing or not allowing an expert to testify. *See Koch Ref. Co.*, 85 F.3d at 1181. The court has considered the policies in favor of disqualification–including preventing conflicts of interest and maintaining the appearance of the judicial process. Both of these policies support a disqualification in this case. Should Mr. Hansen continue in his employment in this case, he will be acting under, at the very least, a potential conflict of interest. Mr. Hansen will be forced to choose between complying with his agreements with

Sensormatic (to maintain confidentiality and to cooperate) and fully advising the party who seeks to use his services in this case (a competitor of his former employer). On the other hand, the policies against disqualification–ensuring that the parties have access to experts and allowing an expert to pursue his profession–do not outweigh the competing policies under the facts of this case. The court has continued this case and will provide the defendant with an opportunity to replace Mr. Hansen as a witness, if it elects to do so. The court is also not convinced that this order unduly impairs Mr. Hansen's ability to act as a consultant in other litigation. Finally, nothing in this order will prohibit the defendants from deposing Mr. Hansen and obtaining discovery of the *facts* known to him which may be relevant to this case. Such testimony, to the extent it reveals confidential information, may be protected through the court's protective order. Accordingly, the court grants the motion to disqualify (#51).

4.   The court grants the joint motion to extend the pre-trial deadlines and the jury selection. The court sets the jury selection in this case for 9:00 a.m. June 5, 2006, in Marshall, Texas. A pre-trial conference is set for Thursday, May 25, 2006, at 2:00 p.m. The court orders the parties to meet and confer on an appropriate amended scheduling order taking into account the jury selection date set forth, the discovery ordered by the court, and any need of the defendants to replace Mr. Hansen as an expert witness. The parties' proposals shall be submitted within ten (10) days of this order.

    SIGNED this 9th day of February, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE