IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS CORP. | § | |
| Vs. | § | CIVIL ACTION NO. 2:04-CV-167 |
| WG SECURITY PRODUCTS, INC., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**1.    Introduction.**

In this patent infringement case, the jury found no infringement of the patents-in-suit. The jury failed to find invalidity. The court bifurcated and took under submission the defendants' counterclaim for breach of contract. The court now rejects those counterclaims and issues a final take-nothing judgment to both parties.

**2.    Discussion.**

The defendant's counterclaim alleges breaches of two separate contracts. The court will first set forth the relevant terms of the contracts. Then, the court will describe the alleged breaches. Finally, the court will consider the merits of each claimed breach.

   **A.    Relevant Terms of the Contracts.**

On June 10, 2002, Sensormatic Electronics Corp. ("Sensormatic") entered a written contract ("the 2002 Contract") with WG Security Products, Inc. ("WG") to enable WG to disclose confidential information about its products and business to Sensormatic. The 2002 Contract was governed by California law. It prohibited Sensormatic from disclosing confidential information and

required Sensormatic to notify WG of any patent infringement claims.

Paragraphs 1-3 of the 2002 Contract governed the treatment of confidential information. These paragraphs provided, in relevant part:

> Each party may disclose to the other Party certain proprietary information, data, techniques, know-how, and business and marketing information in accomplishing the purpose of this Agreement. All such information identified as "confidential" or "proprietary" as set froth below in the Agreement, shall be deemed confidential, proprietary, and valuable trade secret information . . . .

2002 Contract, ¶ 1.

> The receiving Party shall treat all information as Confidential Information for a period of thirty (30) days after receipt of the information.

2002 Contract, ¶ 2.

> All Confidential Information shall remain the property of the disclosing Party and shall be kept confidential by the receiving Party and not disclosed to others except with the prior written consent of the disclosing Party . . . . Sensormatic may disclose Confidential Information to other affiliate and subsidiary companies in the Fire and Security Division of its parent company, Tyco International, Ltd., that are under an agreement to keep such information confidential.

2002 Contract, ¶ 3.

The 2002 Contract also contained a pre-suit notice provision. That provision provided:

> Because of the exchange of Confidential Information, the parties agree that prior to commencing legal action for patent infringement of acoustomagnetic technology patents the Party owning the patent shall notify the alleged infringing Party by Certified Mail of the alleged infringement and shall give the alleged infringing Party a Notice Period of one hundred and eighty (180) days to correct such alleged infringement before taking formal legal action.

2002 Contract, ¶ 11.

In January 2003, ADT Security Systems, Inc. ("ADT") executed a contract with WG ("the 2003 Contract"). ADT and Sensormatic are affiliated companies. Both are owned by Tyco

International, Ltd. The 2003 Contract also provided for disclosure of confidential information by WG to ADT. That contract provides:

> However, any determination that a Party infringes the rights of the other Party after a disclosure of Confidential Information under this Agreement, obligates the receiving Party to advise the disclosing Party of the alleged infringement in writing by Certified Mail, regardless of how the information was learned on which the allegation of infringement rests. Furthermore, the receiving Party agrees that it will not commence any legal action regarding such alleged infringement for a period of not less than 180 days . . . .

2003 Contract, ¶ 11.

### B.   Alleged Breaches.

WG asserts that Sensormatic breached the 2002 Contract in three ways and the 2003 Contract in one way. With respect to the 2002 Contract, WG first alleges that Sensormatic disclosed WG's Confidential Information to employees of ADT and that this violated the 2002 Contract because there was no existing agreement by ADT to keep the material confidential under paragraph 3 of the 2002 Contract. Second, WG alleges that Sensormatic breached the 2002 Contract by seeking and obtaining WG products and technical information from third parties to evade its contractual obligation to provide notice of infringement to WG. WG contends that this conduct violated the contractual covenant of good faith under California law. Third, WG alleges that Sensormatic failed to provide a timely written claim of infringement pursuant to the 2002 Contract. Finally, as to the 2003 Contract, WG alleges that Sensormatic failed to provide a timely written claim of infringement. As a remedy for these alleged breaches, WG seeks an award of its attorneys' fees and costs incurred in defending against the patent infringement suit. The court will address each of these allegations below.

### C. Consideration of Alleged Breaches.

#### 1. First Alleged Breach.

WG contends that Sensormatic violated the terms of the 2002 Contract by disclosing WG's Confidential Information to Sensormatic's affiliate, ADT. The court rejects this claim. The express language of the 2002 Contract allows Sensormatic to disclose WG's Confidential Information to an affiliated company, as long as the affiliate is under an existing agreement to keep the information confidential. The record in this case establishes that although Sensormatic disclosed certain information to its affiliated companies, Sensormatic and these affiliated companies had entered into agreements to keep certain proprietary information confidential. Although WG suggests that these agreements only protected the proprietary information of Sensormatic (and not WG), the evidence supports the view that Sensormatic and its affiliates understood and agreed to maintain the confidentiality of WG's Confidential Information. As a result, the court finds that Sensormatic and its affiliated companies were under existing agreements to maintain the confidentiality of WG's information, and Sensormatic did not breach this provision of the 2002 Contract.

Moreover, the court finds that WG has failed to prove that it suffered any damages as a result of the first alleged breach of the 2002 Contract. The damages claimed by WG in this case are attorneys' fees, expert witness fees and costs incurred by having to defend against the patent infringement case filed by Sensormatic. WG has failed to prove that the first alleged breach of the 2002 Contract was a producing or proximate cause of its claimed damages.

#### 2. Second Alleged Breach.

Next, WG contends that Sensormatic breached the implied covenant of good faith when it obtained WG products from third parties. WG's position is that Sensormatic attempted to end-run

the contractual notice provision by obtaining WG products from third parties and using them to build an infringement case. Furthermore, WG contends that Sensormatic solicited and received an inspection of WG's plant in China at a time when Sensormatic had already determined that it should end any relationship with WG.

Again, WG has failed to demonstrate that Sensormatic's conduct breached the implied covenant of good faith. The evidence in the record supports the view that WG initially failed to supply certain products to Sensormatic, and Sensormatic decided to attempt to acquire those products from third parties. The 2002 Contract expressly exempted information obtained from third parties or found in the public domain from the definition of Confidential Information. As a result, Sensormatic could have reasonably concluded that it had the ability to acquire information about one of its competitors from third parties. Although WG contends that Sensormatic did so to evade its efforts to comply with the notice provision of the 2002 Contract, the court finds otherwise. Specifically, the testimony in the record suggests that Sensormatic obtained the products to learn about its competitor, not for the purpose of avoiding the notice provision. As to WG's claim that Sensormatic obtained a tour of its plant in China at a time when it had already determined to end the contractual relationship, the court disagrees. Mr. Riley's testimony indicates that he had not determined at that time to end Sensormatic's relationship with WG. As a result, Sensormatic's conduct did not breach the covenant of good faith. The court rejects WG's second claim for breach of the 2002 Contract.

### 3. Third Alleged Breach.

WG's third contention is that Sensormatic breached the 2002 Contract by failing to give WG notice of infringement before filing the present lawsuit. Paragraph 11 of the 2002 Contract provides:

> Because of the exchange of Confidential Information, the parties agree that prior to commencing legal action for patent infringement of acoustomagnetic technology patents the Party owning the patent shall notify the alleged infringing Party by Certified Mail of the alleged infringement and shall give the alleged infringing Party a Notice Period of one hundred and eighty (180) days to correct such alleged infringement before taking formal legal action.

2002 Contract, ¶ 11.

It is not disputed that Sensormatic gave no notice of this lawsuit. Sensormatic contends, however, that the 2002 Contract expired on June 10, 2003. Sensormatic maintains that the obligation to give notice did not survive the expiration of the 2002 Contract and that it did not file suit until April 27, 2004, a full 10 months after the expiration of the 2002 Contract. As a result, Sensormatic argues that its failure to give notice was not a breach of the agreement.

The court agrees with Sensormatic. The 2002 Contract contains provisions addressing contract termination and contract expiration. The two terms are not interchangeable. Either party could terminate the 2002 Contract by giving 30 days notice, and Paragraph 13 of the 2002 Contract contains multiple provisions that extend beyond termination of the agreement. It is noteworthy that the notice provision found in Paragraph 11 is not among the specific provisions listed that extend beyond termination. In any event, the 2002 Contract expired by its terms and was not terminated within the meaning of Paragraph 13.

With respect to the question whether the notice provision survived the expiration of the 2002 Contract, paragraph 10 speaks explicitly to that issue. It provides in relevant part:

> Unless renewed in writing, this Agreement shall expire one (1) year from the Effective Date, *provided, however, the obligations for continuing confidentiality shall remain in effect for the period specified herein*.

2002 Contract, ¶ 10 (emphasis added).

Elsewhere, the 2002 Contract requires that the Confidential Information be kept in confidence for three (3) years from the date of disclosure and be used only for the purpose of the agreement. 2002 Contract, ¶ 7. Read together, the express terms of the 2002 Contract reflect that the only provision to survive the expiration of the agreement is the promise to maintain for three years the confidentiality of information disclosed under the agreement. Had the parties to the 2002 Contract intended the notice provision to survive the expiration of the 2002 Contract, they could have easily so provided in either paragraph 10 or 11, with only slight modifications. Because they did not, the court finds that Sensormatic did not breach the 2002 Contract by failing to give notice prior to filing this lawsuit.

### 4. Fourth Alleged Breach.

Finally, WG alleges that Sensormatic breached a 2003 Agreement between ADT and WG. This argument fails because Sensormatic was not a party to the 2003 Agreement. WG has not shown, by a preponderance of the evidence, that ADT was acting as Sensormatic's agent when it entered the 2003 Agreement. Simply put, Sensormatic was not a party to the 2003 Contract and is not liable to WG for any breach of that contract.

### 3. Conclusion.

The evidence credited by the court and found to be persuasive counsels the court to reject WG's counterclaim for breaches of the 2002 and 2003 Contracts. Judgment will be rendered in favor of Sensormatic on these claims. Judgment will be rendered in favor of the defendants on the claim for patent infringement.

SIGNED this 27th day of September, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE